118 F.3d 460
 In re Doug SAPP, Commissioner, Kentucky Department of
Corrections and Phil Parker, Warden, Kentucky
State Penitentiary.
Harold McQUEEN, Plaintiff-Appellant,
v.
Governor Paul E. PATTON, Defendant-Appellee.
 Nos. 97-5755, 97-5768.
 United States Court of Appeals,
Sixth Circuit.
 Submitted June 27, 1997.
Decided June 27, 1997.
 
 David A. Smith, Asst. Atty. Gen., Frankfort, KY, for Petitioners in No. 97-5755.
 David A. Friedman, Carl Wedekind, American Civil Liberties Union of Kentucky, Louisville, KY, Marguerite Neill Thomas, Asst. Public Advocate and Donna L. Boyce (briefed), Department of Public Advocacy, Frankfort, KY, for Plaintiff-Appellant in No. 97-5768.
 David A. Sexton, Asst. Atty. Gen., Civil Division, Frankfort, KY, Connie V. Malone and David A. Smith, Asst. Atty. Gen. (briefed), Frankfort, KY, for Defendant-Appellee in No. 97-5768.
 Before: KEITH, KENNEDY, and BOGGS, Circuit Judges.
 OPINION
 BOGGS, Circuit Judge.
 
 
 1
 Harold McQueen is a convicted murderer scheduled to die before sunrise on July 1, 1997, pursuant to an executive order signed by Governor Paul Patton on June 11, 1997. On May 19, 1997, McQueen filed what purports to be a 42 U.S.C. § 1983 action in the United States District Court for Western District of Kentucky, challenging the manner of his impending execution. He claims that Kentucky's use of electrocution to carry out a death sentence constitutes cruel and unusual punishment. Doug Sapp, the Commissioner for the Kentucky Department of Corrections, moved to dismiss the action for lack of jurisdiction, arguing that the case must be interpreted as a successive federal habeas petition, and thus, the district court did not have jurisdiction to hear the case, absent a certificate of appealability from the Sixth Circuit. 28 U.S.C. § 2244. United States District Court Judge Thomas B. Russell denied Sapp's motion and granted a stay of execution. He did not intimate any opinion on the merits of McQueen's case, other than noting that "it is unnecessary to delve into the particulars regarding the strength of [McQueen's] claim." (Mem.Op. p. 9). Commissioner Sapp has filed before us what is styled as a petition for writ of mandamus to overturn Judge Russell's stay of execution (No. 97-5755).
 
 
 2
 McQueen has also filed a § 1983 action in the United States District Court for the Eastern District of Kentucky, challenging Kentucky Governor Paul Patton's alleged policy of not considering any clemency action for a death row inmate. United States District Judge Joseph Hood denied McQueen's motion for a temporary restraining order and preliminary injunction. McQueen appeals Judge Hood's ruling and moves in our court for a stay of execution (No. 97-5768). In addition, he had filed late today a "Supplemental Emergency Motion for Stay or Injunction Pending Appeal," making further arguments in support of a stay for reasons discussed at pages 11-12. In this opinion, we will refer to the parties opposing McQueen collectively as "the state" or "Kentucky."
 
 
 3
 For the reasons discussed below, we hold that Judge Russell had no jurisdiction to consider the challenge to the manner of execution because that challenge was, in reality, an unauthorized successive habeas petition. In addition, even if the suit could have been considered by Judge Russell, the stay was an abuse of discretion. We affirm Judge Hood's order denying McQueen's motion for a temporary restraining order and preliminary injunction, and we deny McQueen's motion for a stay of execution.
 
 
 4
 * McQueen's case has made four complete round trips through the appellate system. His original set of direct appeals, the primary means for the policing of the criminal justice system in our nation, occurred from 1981 to 1984. His conviction was affirmed by the Kentucky Supreme Court, in McQueen v. Commonwealth, 669 S.W.2d 519 (Ky.1984), and the Supreme Court of the United States denied certiorari, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).
 
 
 5
 His collateral attack in state court on his conviction occurred from 1984 to 1987. His RcR 11.42 petition was denied, and the denial was affirmed by the Kentucky Supreme Court, McQueen v. Commonwealth, 721 S.W.2d 694 (Ky.1986), and certiorari was denied, 481 U.S. 1059, 107 S.Ct. 2203, 95 L.Ed.2d 858 (1987).
 
 
 6
 He began federal habeas proceedings in 1987. He received permission in 1992 to pursue a second round of state collateral attacks, which were unsuccessful, culminating in a denial of certiorari by the Supreme Court, 507 U.S. 1020, 113 S.Ct. 1820, 123 L.Ed.2d 450 (1993). See McQueen v. Scroggy, 99 F.3d 1302, 1309 (6th Cir.1996), cert. denied, --- U.S. ----, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997).
 
 
 7
 Ultimately, his federal habeas petition was denied in the United States District Court for the Eastern District of Kentucky, the denial was affirmed by our court, 99 F.3d 1302 (1996), and the Supreme Court denied certiorari, on June 2, 1997, --- U.S. ----, 117 S.Ct. 2422, 138 L.Ed.2d 185.
 
 
 8
 McQueen has also filed for rehearing in the Supreme Court, by mail on June 26, which has not been docketed or decided as of 10 a.m., June 27. The Supreme Court's mandate will not be returned to this court until the rehearing petition has been decided. However, as no stay of execution was pending in this case until Judge Russell's this week, the Supreme Court's proceedings are at this point not relevant.
 
 
 9
 Faced with the fact of his final impending execution, McQueen filed this action of May 19, 1997, though he did not seek a stay of execution until June 20, eleven days before the scheduled execution.
 
 II
 
 10
 When Judge Russell granted the stay of execution, he simultaneously certified the case as suitable for direct appeal under 1292(b). The state, the next day, chose to file a document labeled "Application for Writ of Mandamus" wherein it requested that the stay be lifted, that the action be dismissed as beyond the court's jurisdiction, and that this court issue an order forbidding all courts in the Sixth Circuit to entertain any further actions concerning McQueen without our leave. In response to our request pursuant to Fed. R.App. P. 21(b)(1), McQueen filed a response to the state's petition.
 
 
 11
 The clear import of the state's filing was to secure the vacating of the court's stay, an end appropriately sought by a motion under Fed. R.App. P. 8 or by the appeal Judge Russell had authorized. Because mandamus should be used sparingly, and "it is ordinarily undesirable to place the trial court judge, even temporarily, in an adversarial posture with a litigant." (1996 Advisory Committee note), we choose to consider the motion as an appeal. See Yates v. Mobile County Personnel Board, 658 F.2d 298 (5th Cir.1981).
 
 III
 
 12
 Challenges to methods of execution have become common in recent years, and have included all methods of execution. Like many of the other challenges, this case has been brought for the specific purpose of stopping the execution of a particular person. Although McQueen claims that he is not challenging the constitutionality of the death penalty itself but only "a condition of confinement," we believe that this challenge to the manner of execution is a challenge seeking to interfere with the sentence itself, and thus, is properly construed as a petition for habeas corpus.
 
 
 13
 Judge Russell correctly noted that if McQueen's action, whatever it is labeled, is in fact properly characterized as a second habeas petition, the district court "would lack jurisdiction over the claim at this time pursuant to 28 U.S.C. § 2244." (Mem.Op. p. 2)
 
 
 14
 He also correctly noted that the Supreme Court, in the apparently similar case of Gomez v. District Court, 503 U.S. 653, 112 S.Ct. 1652, 118 L.Ed.2d 293 (1992), held that a challenge to the California method of execution was "an obvious attempt to avoid the application of McCleskey v. Zant, to bar this successive claim for relief." (Mem.Op.p.2), (citing Gomez, 503 U.S. at 653, 112 S.Ct. 1652 (citation omitted)).
 
 
 15
 In this decision, we are guided by the Supreme Court's decision in Gomez, as interpreted by Lonchar v. Thomas, 517 U.S. 314, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996). In Gomez, the Supreme Court found that Robert Alton Harris's § 1983 claim that execution by lethal injection was cruel and unusual punishment was nothing more than "an obvious attempt to avoid the application of McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), to bar th[e] successive claim for relief." Gomez, 503 U.S. at 653, 112 S.Ct. 1652. Thus, Gomez held that a death row inmate cannot escape the rules regarding second or successive habeas petitions by simply filing a § 1983. The court went on to say, as an aside, that "even if we were to assume" that he could avoid the application of the restrictions on successive habeas petitions, "we would not consider it on the merits." The court then noted that no matter what the challenge to the method of execution is called, it is an appeal to equity. It held that because of "the state's strong interest in proceeding with its judgment and [defendant's] obvious attempt at manipulation" and the fact that the "claim could have been brought more than a decade ago [t]here is no good reason for this abusive delay." Id. at 654, 112 S.Ct. at 1653.
 
 
 16
 Thus, the Supreme Court ruled on two independent grounds, and neither undermines the other. More recently, the Eleventh Circuit has considered exactly the issue here, in Felker v. Turpin, 101 F.3d 95 (11th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 450, 136 L.Ed.2d 345 (1996), and in Hill v. Hopper, 112 F.3d 1088 (11th Cir.), cert. denied, --- U.S. ----, 117 S.Ct. 1571, 137 L.Ed.2d 714 (1997), as recently as this April. In Felker, the Eleventh Circuit addressed the exact type of challenge before this court--whether the use of electrocution to carry out a death sentence is cruel and unusual punishment. Relying on the Supreme Court's decision in Gomez, the court held that a prisoner may not circumvent the rules regarding second or successive habeas petitions simply by filing a § 1983 claim to challenge the manner of execution. Thus, it held that the district was without authority to consider the requested relief. The Felker holding has since been reaffirmed by the 11th Circuit in Hill. We find this reasoning persuasive.
 
 
 17
 Judge Russell attempted to find some flexibility in the reasoning of Gomez, by noting that the Supreme Court failed to reiterate the formula that a challenge to method of execution must be treated as a habeas petition when it vacated as moot a challenge to the California gas chamber when the state switched to lethal injection. See Gomez v. Fierro, --- U.S. ----, 117 S.Ct. 285, 136 L.Ed.2d 204, vacating as moot 77 F.3d 301 (9th Cir.1996). However, that is an extremely weak reed on which to rest any undermining of the court's holding in Gomez. The fact that the Supreme Court did not find it necessary to instruct lower courts on their already clear duties, in haec verba, when simply ruling on a clear case of mootness, is no indication the court had changed its mind about what it said in Gomez. Moreover, McQueen's argument that his purported § 1983 action is simply a challenge to his "conditions of confinement" rather than to the sentence itself is unpersuasive. The prevention of the execution is itself an overturning of the sentence. McQueen was sentenced to death, not simply to a lifetime of litigating about death. Thus, this challenge is not equivalent to a simple "conditions of confinement" action, such as a claim that a prisoner's cell is too cold, though the prisoner doesn't object to being imprisoned in a warmer cell.
 
 
 18
 We follow the clear holding of Gomez, as endorsed by the Eleventh Circuit, that a challenge to a method of execution, whatever denominated (Rule 60(b), see McQueen, 99 F.3d at 1335 (collecting cases), § 1983, or otherwise) is to be treated as a habeas petition. We apply the rules regulating second or successive habeas petitions. The district court was without authority to consider his request for relief because he failed to apply to our court for permission to file a second habeas petition, as required by 28 U.S.C. § 2244(b)(3)(A).
 
 
 19
 Therefore, the district court has no jurisdiction to consider the case and a fortiori, no jurisdiction to issue a stay of execution. In Re Parker, 49 F.3d 204, 213 (6th Cir.1995).
 
 IV
 
 20
 Even were we to consider the merits of McQueen's claim, we would not permit his claim that death by electrocution constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. Petitioner has known of the possibility of execution for over fifteen years. It has been ten years since a Kentucky governor first signed a death warrant for his electrocution. The legal bases of such a challenge have been apparent for many years. See e.g., In Re Kemmler, 136 U.S. 436, 10 S.Ct. 930, 34 L.Ed. 519 (1890); Porter v. Wainwright, 805 F.2d 930 (11th Cir.1986), cert. denied, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Indeed, petitioner's claims on the merits are replete with supporting arguments based on events and reasoning from every decade from the 1910s to the 1990s, even discounting the material cited to "Startling Detective" and "News of the Weird" (Memo in Support of Motion for Temporary Restraining Order and Preliminary Injunction, at 31, n.87 and App. 2, n.6.). Even though, in petitioner's mind, every year or every day may bring new support for his arguments, the claims themselves have long been available, and have needlessly and inexcusably been withheld. Thus, equity would not permit the consideration of this claim for that reason alone, even if jurisdiction were otherwise proper.
 
 
 21
 Finally, we note that the balance of the traditional four-factor tests for an injunction, Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 945 F.2d 150 (6th Cir.1991), indicates that a stay would be an abuse of discretion, and Judge Russell did not really argue otherwise. He simply noted that the issue of "our society's present tolerance of electrocution as a constitutional means of execution" has not been examined in Kentucky or the Sixth Circuit for thirty-five years. (Mem.Op., p. 6).
 
 
 22
 However, this lack of consideration does not create any likelihood of success on the merits. Indeed, Judge Russell's principle would give the first prisoner scheduled for execution in each circuit and even each state, a free bite at the apple of successive habeas relief, even when that challenge is inexcusably delayed and manipulatively brought. That cannot be the law. Absence of recent case authority in a particular jurisdiction for well-settled principles cannot take the place of real evidence showing a likelihood of succession on the merits.
 
 
 23
 Electrocution has never been found to be cruel and unusual punishment by any American court. See, e.g., In re Kemmler, 136 U.S. at 443-44, 10 S.Ct. at 932; Ingram v. Ault, 50 F.3d 898 (11th Cir.1995); Felker, 101 F.3d at 97, Porter, 805 F.2d at 943 n. 15; Glass v. Louisiana, 471 U.S. 1080, 105 S.Ct. 2159, 85 L.Ed.2d 514 (1985) (Brennan, J., dissenting from denial of certiorari) ("such claims have uniformly and summarily been rejected"). No legislatively authorized method of execution in the United States is outlawed in any jurisdiction by any currently-effective court decision. Fierro --- U.S. at ----, 117 S.Ct. at 285; Rupe v. Wood, 863 F.Supp. 1307 (W.D.Wash.1994), vacated as moot, 93 F.3d 1434 (9th Cir.1996). The very practice of electrocution has been upheld by other courts within the past year, and there is no argument even plausible that there are differences in the level of "evolving decency" among the different circuits or states of the union, or over the last very few years.
 
 
 24
 Thus, petitioner has presented no indication of likelihood of success on the merits, and Judge Russell's agnosticism on this point ("the stay is not based primarily on the chance of plaintiff prevailing" and "the court finds it unnecessary to delve into the particulars regarding the strength of plaintiff's claim as it exists on the current record," (Mem.Op. p. 9)) emphasizes the weakness of the case for a stay.
 
 
 25
 When we are considering a very belated claim, raised at the last minute to prevent execution, after many earlier opportunities to raise the issue were foregone, the significant and irreparable harm of execution is balanced by an equally significant and irreparable harm to the legal process, a harm not fully repairable by action after appeal. In Re Parker, 49 F.3d 204, 208 (6th Cir.1995). Thus, what is necessary to support a stay is a strong and significant likelihood of success on the merits, which simply does not exist in this case.
 
 V
 
 26
 In No. 97-5768, McQueen claims that Judge Hood erred in dismissing his various claims that he has a due process or other right to some particular type of consideration when the Governor fails to grant him clemency. Alternatively, he claims that the Governor violated his right to due process when he announced a general policy of not granting clemency in capital cases. These claims are without merit.
 
 
 27
 The very nature of clemency is that it is grounded solely in the will of the dispenser of clemency. He need give no reasons for granting it, or for denying it. And there is no precedent in our law that the granter of clemency need do anything with a request for clemency--which McQueen, in reality, has never filed. The governor may agonize over every petition; he may glance at one or all such petitions and toss them away; he may direct his staff as to the means for considering them. Certainly, McQueen could not complain if a petition went into the Governor's office and simply came out stamped "Denied." He equally cannot complain that the governor has chosen to resolve his mind on these matters by considering cases by categories, nor that he has chosen to make an announcement of such reasoning. No more is the governor bound by such a statement. He may change his mind tomorrow, or he may grant clemency in the face of his own announced policy, without hindrance.
 
 
 28
 Just as the citizenry would have no legal claim if the governor were to announce that he would, without contemplation, pardon all violators of a certain law, McQueen has no claim that the governor, without individual contemplation, has failed to give him the relief that is in the governor's sole discretion.
 
 
 29
 This has been the holding of every court that has considered the issue, Solem v. Helm, 463 U.S. 277, 301, 103 S.Ct. 3001, 3015, 77 L.Ed.2d 637 (1983); Solesbee v. Balkcom, 339 U.S. 9, 12, 70 S.Ct. 457, 458, 94 L.Ed. 604 (1950); United States v. Patti, 291 F.2d 745, 746 (3rd Cir.1961); Binion v. United States Dep't.of Justice, 695 F.2d 1189, 1190 (9th Cir.1983); Hatch v. Oklahoma, 92 F.3d 1012, 1016 (10th Cir.1996); Eacret v. Holmes, 215 Or. 121, 333 P.2d 741, 744 (1958), and cases cited therein.
 
 
 30
 Section 77 of Kentucky's Constitution simply grants the Governor the power to "remit fines and forfeitures, commute sentences, grant reprieves and pardons." It in no way establishes specific procedures to be followed and imposes no standards, criteria, or factors that the Governor need consider in exercising his power. Thus, in Kentucky, the decision to grant clemency is left to the Governor's unfettered discretion and the state has not made the clemency process an integral part of the state's overall adjudicative process. Cf. Woodard v. Ohio Adult Parole Authority, 107 F.3d 1178 (6 th Cir.1997) (governor's unfettered discretion to grant clemency does not create life or liberty interest in clemency which is protected by the Due Process Clause; however, where state has instituted clemency procedures in such a manner that it becomes an integral part of that state's overall adjudicative process due process may play role). The Supreme Court granted certiorari in Woodard on June 27, 1997. Based on this action, McQueen has argued in a "Supplemental Emergency Motion" that this court should grant a stay of execution until the Supreme Court decides this case. The grant of certiorari, however, does not affect the proposition for which we cite Woodard. Ohio sought certiorari to consider the standard for due process review where a state has instituted specific clemency procedures to control a Governor's clemency determination. No Supreme Court resolution of this issue could affect Kentucky's situation, where no procedures are even arguably mandated.
 
 
 31
 Therefore, Judge Hood did not err in dismissing the challenge to Governor Patton's clemency procedures, and we deny the Motion and Supplemental Motion for a Stay of Execution.
 
 VI
 
 32
 The state's petition must be considered under the mandamus standards to the extent that only mandamus could support the State's request to issue "a Vasquez v. Harris, 503 U.S. 1000, 112 S.Ct. 1713, 118 L.Ed.2d 419 (1992) protective order" forbidding any district court from issuing any stay or entertaining any further filings concerning McQueen without this court's permission. We decline to issue such an order. The Vasquez order was issued in the very special and controverted circumstances of the Robert Alton Harris case, when it appeared to many that the actions of lower courts in staying his execution were bordering on willful contempt of the Supreme Court's controlling precedents and orders. See Noonan, Horses of the Night: Harris v. Vasquez, 45 Stan. L.Rev. 1011, 1019 and nn. 44-52 (1993) and authorities cited therein. We see no evidence of, nor forsee the likelihood of any future instances of, such action by the courts in this Circuit, and thus we decline the request at this time.
 
 VII
 
 33
 We therefore, in No. 97-5755, REVERSE Judge Russell's decision to assume jurisdiction of McQueen's action, and direct Judge Russell to dismiss case No. 97-125, now pending before him, for lack of jurisdiction. We also VACATE the stay of execution issued by Judge Russell on June 24, 1997. In No. 97-5768, we DENY the motion for a stay of execution and AFFIRM the judgment of the district court.
 
 
 34
 KEITH, Circuit Judge, concurring.
 
 
 35
 Although I continue to believe that fundamental errors were committed in this case, thereby rendering the sentence of death constitutionally deficient, see McQueen v. Scroggy, 99 F.3d 1302, 1336 (1996) (Keith, J., dissenting) (arguing that McQueen's habeas petition should be granted), I concur in this opinion because there are no longer any procedural avenues left for McQueen to pursue.
 
 
 36
 I write separately only to point out that in my view Gomez does not hold that every § 1983 petition challenging a petitioner's manner of death is per se a successive habeas petition. Inasmuch as that is the holding of Part III of this opinion, I disagree with that Part. However, I concur in the rest of the opinion.