*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0058P (6th Cir.)
File Name: 04a0058p.06

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT
# IN THE MATTERS OF: LEWIS WILLIAMS, JR. AND JOHN GLENN ROE

---

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

IN RE LEWIS WILLIAMS, JR.
*Petitioner-Appellant*

No. 04-3014

Filed:   January 12, 2004

BEFORE: KENNEDY, SUHRHEINRICH and MOORE, Circuit Judges

KENNEDY, Circuit Judge. Petitioner Lewis Williams filed this §1983 action in the district court challenging the method of administering the lethal injection of drugs at his execution as a constitutional violation of his right to be free from cruel and unusual punishment and seeking an injunction to postpone his execution scheduled for January 14, 2004. The district court treated petitioner's complaint as a second, or successive, petition[1] and transmitted it to the court.

The § 1983 action challenging the method of administering drugs at his execution is, as he concedes, to be treated as a second habeas action under current Sixth Circuit decisions. The majority of the panel would deny permission to file a second habeas on the grounds presented. They have never been presented to the state court, so there has been no exhaustion. The affidavits in support of a preliminary injunction, in essence, state that if lethal injection is not administered properly, petitioner could experience severe pain without displaying any sign of it. Responsive affidavits detailing the procedure indicate that the concern expressed by petitioner is so unlikely as to be immeasurable.

Petitioner essentially bases his request for a stay of execution on the Supreme Court having granted certiorari in *Nelson v. Campbell,* No. 03-6821, 2003 WL 22327593, 72 USWL 3363 (Dec. 1, 2003). *Nelson* involves a case involving a prisoner facing the death penalty whose peripheral veins were unavailable and who had to be sedated through the central venous system. The state in *Nelson* chose the "cut down" technique which allegedly requires more experience and medical training than the usually-performed per cutaneous technique. The Court granted certiorari to answer the following question:

> Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks to stay his execution in order to pursue a challenge to the procedures for carrying out his execution, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?

---

[1] The complaint also sought similar relief for John Glenn Roe scheduled for execution February 3, 2004.

-2-

The Court has also acted on at least two cases involving similar last-minute challenges to the method of execution of by injection, both from the Fourth Circuit. In *Rowsey v. Beck,* No. 04-6073 (4th Cir. Jan. 8, 2004), *motion to vacate granted, Beck v. Rowsey,* 504 U.S. __, 2004 WL 40382 (Jan. 8, 2004), the court vacated the stay granted by the Fourth Circuit. In *Reid v. Johnson,* No. 03-7916 (4th Cir. Dec. 17, 2003), *motion to vacate stay denied, Johnson v. Reid,* 504 U.S. __, 2003 WL 22970950 (Dec. 18, 2003), the district court had granted an injunction staying an execution. The court of appeals affirmed. The Supreme Court denied the state's motion to vacate. Of most relevance to the present petition, however, is the Court's denial of application for stay of execution in *Zimmerman v. Johnson*, 2003 U.S. Lexis 9199, 72 USLW 3406 (Dec. 15, 2003). In *Zimmerman,* the Fifth Circuit affirmed the dismissal of the action on the procedural ground that § 1983 is not an appropriate vehicle for challenges to the method of execution and held that applicant should have proceeded by applying for a writ of habeas corpus. The four Justices that dissented from the denial of stay stressed that the Court should stay execution until *Nelson* was decided. The majority, however, clearly disagreed. We understand this decision to mean that this Circuit is free to follow its prior precedent with regard to this question until the Supreme Court issues its decision in *Nelson.*

Accordingly, the majority of the panel is of the opinion that we should continue to follow Sixth Circuit precedent in *In re Sapp,* 118 F.3d 460, 464 (6th Cir. 1997) and treat this case as a second, or successive, petition. The district court properly transferred the case as filed to this court so it could pass on it as a request for a second petition. We decline to permit the claim to be filed as a second petition. It has never been presented to a state court. Indeed, petitioner does not seriously claim it meets the requirements for a second petition.

Petitioner asks that we stay our decision to await the decision of the Supreme Court in *Nelson.* He proffers affidavits from a physician who states that if thiopental sodium is not administered for a sufficient length of time to complete the other steps of the procedure, petitioner will suffer severe pain. A lay person who experienced this difficulty describes the pain in her affidavit. In response, the state submits an affidavit from an extremely well-qualified physician explaining why, in the dose to be used by the state, two (2) grams, the condition described by plaintiff's expert will almost certainly not occur. He notes that when thiopental sodium is commonly used for general anesthesia in surgery, it is normally administered in a dose of 300 to 400 milligrams.

Petitioner's motions for remand to the district court, for preliminary injunctive relief and for stay of execution are DENIED.

In order that petitioner have counsel to pursue any possible habeas relief from the order, Stephen A. Ferrell is appointed to represent petitioner on such proceedings.

**In re:  Lewis Williams, Jr.; No. 04-3014**

**SUHRHEINRICH, Circuit Judge, concurring.** I concur in Judge Kennedy's opinion.  However, I would simply direct the Warden to carry out the execution in the manner advocated by the petitioners' expert.  The petitioners do *not* challenge the fact of their execution; they challenge only the method currently employed by the State of Ohio.  By affidavit they have proposed an alternative method which they advocate does not constitute cruel and unusual punishment. The affidavit of the petitioners' expert, Dr. Mark J.S. Heath, which is incorporated into the petitioners' "Motion to Stay and Abey Proceedings," states in relevant part:

J)   The benefits of thiopental in the operating room engender serious risks in the execution chamber.  Based on the information I have available to me concerning Ohio's execution protocol, a two (2) gram dose of sodium thiopental is apparently administered in a single injection from a single syringe.  By contrast, based on my research and the research of others into the procedures for executing human beings by means of lethal injection, the original design of the lethal injection protocol called for the **continuous** intravenous administration of an ultrashort-acting barbiturate. Based on my research and the research of others, the central elements of the lethal-injection procedure used in Ohio is similar to the one adopted many years ago in Oklahoma (which, it appears, many states used as a model without substantive independent research). Oklahoma requires the "continuous intravenous administration of an ultrashort-acting barbiturate" (Oklahoma Statutes, Title 22 Criminal Procedure, Chapter 17 part 1014A).  It does not appear that Ohio's protocol includes this "continuous" requirement.  The use of a continuous administration of the ultrashort-acting barbiturate is essential to ensure continued and sustained unconsciousness during the administration of pancuronium and potassium chloride.  It is my opinion based on a reasonable degree of medical certainty that

the failure to require a continuous infusion of thiopental places the condemned inmate at a needless and significant risk for the conscious experience of paralysis during the excruciating pain of both suffocation and the intravenous injection of potassium chloride.

Motion to Stay and Abey Proceedings, at 13 (quoting Heath Affidavit ¶ 17).

If the Warden is ordered to follow the method advanced by the petitioners' chosen expert, then the procedural question of whether the claim is properly considered a § 1983 action or a successive habeas petition will be moot, as the petitioners would have received the relief that they request.

No. 04-3014, *In re Lewis Williams, Jr.*

**KAREN NELSON MOORE, Circuit Judge, dissenting.**
I believe that the proper course of action is to grant the preliminary injunction staying the execution of Williams. The Supreme Court's grant of certiorari in *Nelson v. Campbell,* No. 03-6821, 2003 WL 22327593, 72 U.S.L.W. 3363 (Cert. Granted Dec. 1, 2003), calls into question our decision in *In re Sapp*, 188 F.3d 460 (6th Cir. 1997), upon which the district court relied in transferring the action to us as a second or successive habeas petition pursuant to 28 U.S.C. § 1631. In *Sapp*, a panel of this court held that a challenge to a method of execution brought as an action under 42 U.S.C. § 1983 constitutes a habeas corpus petition. *Sapp*, 188 F.3d at 464. *Sapp* relied upon an earlier Supreme Court decision, *Gomez v. United States Dist. Ct. for the N. Dist. of Cal.*, 503 U.S. 653, 653-54 (1992), in reaching its decision. Now, the Supreme Court has undertaken to resolve the following question: "Whether a complaint brought under 42 U.S.C. § 1983 by a death-sentenced state prisoner, who seeks *to stay his execution in order to pursue a challenge to the procedures for carrying out the execution*, is properly recharacterized as a habeas corpus petition under 28 U.S.C. § 2254?" *Nelson*, 2003 WL 22327593, at *1 (emphasis added). The Supreme Court's ruling could directly overrule *Sapp*, confirm the earlier high court holding upon which *Sapp* relied, or reach some middle ground, but naturally we will not know the answer to this question for several months.

It would be inappropriate and unjust to permit Williams's execution to occur when the Supreme Court has yet to decide whether Williams has a right to present his claim as a § 1983 action. The Supreme Court, the Sixth Circuit, and other circuits have all granted stays of execution when the Supreme Court has taken a case to resolve an important issue germane to the action. *McFarland v. Scott*, 512 U.S. 849, 853 (1994); *Selvage v. Collins*, 494 U.S. 108, 109 (1990); *Steffen v. Tate*, 39 F.3d 622, 623 (6th Cir. 1994); *Mobley v. Head,* 306 F.3d 1096, 1097 (11th Cir. 2003). Recently, the Fourth Circuit stayed the execution of two prisoners, one from Virginia and one from North Carolina, pending the Supreme Court's decision in *Nelson* after those prisoners brought § 1983 claims apparently identical to Williams's. *See Reid v. Johnson*, No. 03-7916 (4th Cir. Dec. 17, 2003) (order granting preliminary injunction); *Rowsey v. Beck*, No. 04-6073 (4th Cir. Jan. 8, 2004) (order denying motion to vacate stay of execution granted by the district court). The Supreme Court denied a motion to vacate the stay in *Reid, Johnson v. Reid*, 504 U.S. ____, 2003 WL 22970950 (Dec. 18, 2003), yet it vacated the stay of execution in *Rowsey*, over the dissent of four Justices. *Beck v. Rowsey*, 504 U.S. ____, 2004 WL 40382 (Jan. 8, 2004). The disparate treatment of these two cases by the Supreme Court is difficult to reconcile given their similarity; the district court in *Rowsey* stated that the issue there was "factually and procedurally similar, if not identical" to the issue in *Reid. Rowsey v. Beck*, No. 5:04-CT-04-BO, at 4 (E.D.N.C. Jan. 7, 2004). The Supreme Court's denial of an application for a stay of execution in *Zimmerman v. Johnson*, 2003 U.S. Lexis 9199, 72 U.S.L.W. 3406 (Dec. 15, 2003), does not provide any further guidance. Without further development of the reasons for the Supreme Court's actions, we should exercise prudence and caution in the face of ambiguity when the consequences of our decision have such gravity.

At this stage, the question of whether Williams has properly filed a second or successive habeas petition pursuant to the provisions of 28 U.S.C. § 2244(b)(2)(A)-(B) is irrelevant because the predicate issue of whether his § 1983 claim is properly construed as a second or successive petition is pending before the Supreme Court. Equally unimportant is a consideration of the merits of Williams's § 1983 action — whether the State of Ohio's procedures for lethal injection, which include the allegedly improper use of the barbituate, thiopental sodium, and the administration of a neuromuscular blocking agent, pancuronium bromide, that is banned for veterinary use by several states, constitute a cruel and unusual punishment in violation of the Eighth Amendment. The resolution to this question is not appropriately considered now; if the Supreme Court's forthcoming decision in *Nelson*

*v. Campbell* demonstrates that Williams's action is a § 1983 action and not a second or successive habeas petition, the district court must first consider his claim. In any event, the contrasting views of the physicians' affidavits presented by Williams and the State of Ohio serve to demonstrate a serious question regarding the merits. Nonetheless, here we simply must decide whether Williams's execution can go forward given that the Supreme Court may determine that Williams has the *opportunity* to present his grievance before the district court as a § 1983 action. It should not.

In the interest of procedural fairness, I would grant the motion for a preliminary injunction to stay the execution and hold the case in abeyance. It would be cause for great regret if Williams were executed on Wednesday morning only to have the Supreme Court determine several months later that Williams in fact deserved a chance to pursue his action in federal district court.

NO. 04-3014

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

IN RE: JOHN GLENN ROE

    **Petitioner-Appellant**

**v.**

_____/

Filed: January 12, 2004

**BEFORE: SUHRHEINRICH, SILER, and CLAY, Circuit Judges.**

Petitioner John Glenn Roe filed joint motions with Lewis Williams, Jr. to stay and abey proceedings and for preliminary injunctive relief for stay of execution. Because these are habeas proceedings, we address each of the petitioners' motions separately. We hereby adopt in this case the reasoning and the result of the majority opinion authored by Judge Kennedy and concurred in by Judge Suhrheinrich in the matter of *In re: Lewis Williams, Jr.*, issued on January 12, 2004. We further adopt the concurring opinion of Judge Suhrheinrich in the *Williams* matter.

Thus, for the reasons stated in the those opinions, Petitioner John Glenn Roe's requests for a stay and abeyance and for preliminary injunctive relief are **DENIED**.

**CLAY**, Circuit Judge, dissenting.

I hereby dissent from the order and opinion of the majority in the instant case for the reasons expressed by Judge Moore's dissent in *In re Lewis Williams, Jr.,* No. 04-3014.

No. 04-3044

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LEWIS WILLIAMS, JR., et al.,

      Plaintiffs -Appellants     A M E N D E D

v.

                     O R D E R[2]

ROBERT TAFT, et al.,

      Defendants - Appellees

Filed:  January 15, 2004

Before: BOGGS, Chief Judge; KENNEDY, MARTIN, S U H R H E I N R I C H ,   B A T C H E L D E R , DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, and ROGERS, Circuit Judges

This matter comes before the court upon the petition of the plaintiffs-appellants for initial hearing en banc of case No. 04-3044 and a motion for stay of execution, and the motion of the defendants-appellees for dismissal of the appeal.

A majority of the non-recused judges in regular active service having voted to grant the petition for hearing en banc, the petition is GRANTED and the appeal is referred to the en banc court for further consideration.

---

[2]This order was initially entered on January 13, 2004.  It was amended on January 15, 2004 to reflect the joinder in Judge Clay's dissenting opinion of the several judges noted as having done so.  In all other respects, the amended order is identical to the initial order.

Less than a majority of the court having voted in favor of either the motion to dismiss the appeal or the motion to stay execution, those motions are hereby DENIED.

**CLAY, Circuit Judge, dissenting, joined by MARTIN, DAUGHTREY, MOORE, and COLE, Circuit Judges.** I dissent from the order denying the motion to stay execution in *Williams v. Taft*, No. 04-3044, because the vote was illegal under 28 U.S.C. § 46(c). Section 46(c) provides, in relevant part, that an *en banc* court "shall consist of all circuit judges in regular active service …, except that any senior circuit judge of the circuit shall be eligible … to participate … as a member of an in banc court *reviewing a decision of a panel of which such judge was a member*." 28 U.S.C. § 46(c) (emphasis added). In other words, the statute expressly circumscribes a senior circuit judge's ability to participate in an *en banc* proceeding by limiting that participation to the review of the panel's decision from which the *en banc* review arose. Here, all that is presently before the *en banc* court is a motion to stay Williams' execution, not the merits of the preceding panel decision. Accordingly, the statute does not permit Judges Kennedy and Suhrheinrich to participate in the vote on the motion to stay. To the extent the Sixth Circuit Rules, the Sixth Circuit Internal Operating Procedures or internal Court Rules might be interpreted to grant my two colleagues the right to vote, 28 U.S.C. § 46(c) is paramount. This misapplication of the statute has resulted in an outcome contrary to law inasmuch as the requested stay would have been granted in the absence of the votes cast by Judges Kennedy and Suhrheinrich. Moreover, this unlawful denial of the motion to stay has eviscerated the results of the poll of the active judges granting *en banc* review. Without a stay, the *en banc* review authorized by § 46(c) will never take place.

ENTERED BY ORDER OF THE COURT

_____

Leonard Green, Clerk

Nos.  04-3044/3066

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

JOHN GLENN ROE,
    Plaintiff - Appellant

v.                       O R D E R

ROBERT TAFT, Governor, et al.,
    Defendants - Appellees

Filed:  January 30, 2004

Before:  BOGGS, Chief Judge; MARTIN, BATCHELDER, DAUGHTREY, MOORE, COLE, CLAY, GILMAN, GIBBONS, ROGERS, and COOK, Circuit Judges

A majority of the non-recused judges in active service having voted *sua sponte* to reconsider and rescind the order of January 13, 2004, granting hearing *en banc* in Case No. 04-3044, all pending motions and filings are referred in the first instance to the assigned panel, for such action as it finds appropriate.

IT IS SO ORDERED.

**Danny J. Boggs, Chief Judge**, concurring in the issuance of the court's Order. There could be some controversy over the extent to which the appeal initially filed "jointly" by Mr. Williams and Mr. Roe on January 13 should have been treated as a single matter, even though it clearly dealt with matters considerably, if not totally, identical to those that had been dealt with by separate death-penalty panels on January 12. However, this court chose, without ultimate objection, to treat Roe's status as being an appellant within the "initial hearing *en banc*" granted by the non-recused active members of the court. Thus, at a minimum, the appeal lay within the competence of the *en banc* court, and the *en banc* court was free, on motion by a judge of that court, to reconsider and rescind its previous action.

To the extent that Judge Clay challenges the decision of a judge to vote rather than to recuse on a specific matter, that is a matter within the discretion of the individual judge. The court has no power to make a "decision to permit Judge Cook to participate in the instant vote," nor to prevent her from participating. To the extent that I understand the matter, Judge Cook never had any connection whatsoever with any matters concerning John Glenn Roe in her previous service on the Ohio Supreme Court. Lewis Williams is no longer alive, and thus no matter concerning him can impact the consideration of Roe's case. There is thus no reasonable ground to question her decision to vote on the matter that was properly before the judges of the *en banc* court.

**CLAY, Circuit Judge, dissenting, joined by MARTIN, DAUGHTREY, and COLE, Circuit Judges.** Let us be clear on what has just transpired. This Court extricated the appeal relating to Petitioner John Roe's claim under 42 U.S.C. § 1983 from Case No. 04-3044 in which *en banc* review had already been granted on January 13, 2004; assigned it a new case number; and conducted a vote on whether to rescind the January 13 decision to hear the appeal *en banc*. The adoption of this procedure, and the ensuing vote to grant the rescission by a six to five vote, has nullified the votes of the non-recused active judges cast on January 13 and has created the appearance of manipulation and impropriety. Accordingly, I dissent.

In *Williams v. Taft,* Case No. 04-3044 (6th Cir. Jan. 13, 2004), Lewis Williams and John Roe filed a complaint under 42 U.S.C. § 1983 challenging execution procedures. The district court refused to entertain the lawsuit, construing it as second or successive habeas corpus petitions that could not be heard in the district court without the prior approval of this Court. After the district court transferred the matter to this Court, and Williams' and Roe's purported habeas claims were assigned to separate three-judge panels, Williams and Roe petitioned for initial *en banc* adjudication of the district court's decision that effectively dismissed their §1983 claims. At that point, this Court arguably had the option of deeming Roe's *en banc* petition as duplicative of, or superseded by, the three-judge panels' review, but did not do so. This Court also arguably had the option of uncoupling Williams' and Roe's respective § 1983 claims for purposes of appellate review, but it chose not to. Instead, this Court established that appellate review of Williams' and Roe's respective § 1983 claims would be considered jointly under a unitary case number, separate and apart from the appeal considered by the three-judge panels. A poll of the non-recused, active judges was then conducted on whether to hear this case *en banc*. By a six to four vote on January 13, the Court granted the petition for initial hearing *en banc*. Judge Cook did not participate in that vote, having recused herself on her own initiative.

Prior to this Court's vote to rescind the vote of January 13, the only issue left open was Roe's motion to stay the execution, which had been a joint motion with Williams. For the reasons stated in my dissent in Case No. 04-3044, the vote on the motion to stay was improper under 28 U.S.C. § 46(c) due to the participation of Senior Judges Kennedy and Suhrheinrich. But even assuming, *arguendo,* that their participation had been proper with respect to Williams, it is clear that that vote did not, and could not have impacted, Roe. Judge Kennedy was not a member of the three-judge panel that had adjudicated the successive petition issue with respect to Roe. Accordingly, to the extent the Court's judgment of January 13 denied Roe's motion to stay the execution, that judgment should have vacated, and the non-recused, active judges should have been polled on whether to grant Roe's motion to stay the execution. This was not done.

Even assuming it was technically proper for this Court to have voted on whether to rescind its action of January 13, I have grave concerns about this Court's decision to permit Judge Cook to participate in the instant vote. As noted, on her own initiative, Judge Cook recused herself from the January 13 vote concerning Williams' and Roe's joint request for *en banc* review. After Williams was executed, however, Judge Cook indicated that she should participate in an *en banc* Court concerning Roe's appeal because she had not previously considered any matters concerning Roe. I beg to differ. Judge Cook's basis for recusal survived Williams' execution because Williams' and Roe's appeals were intertwined. Most of the pleadings and briefs pertaining to Roe were joint efforts with Williams. Judge Cook necessarily read and considered these papers in considering her vote on the rescission. In addition, Judge Cook was privy to the intra-Court communications and deliberations concerning Williams' appeal. Had this Court been aware that Judge Cook was going to "un-recuse" herself after Williams' death, precautions would have been (or should have been) taken to preclude her receipt of any pleadings or communications concerning Williams. This was not done either. Needless to say, Judge Cook's consideration of how she should vote in *Roe* was necessarily influenced and impacted by the Court's deliberations in *Williams* from which Judge Cook recused herself. The entire situation suggests impropriety.

Without Judge Cook's vote, the vote to rescind would have failed on a tie vote and the *en banc* Court would have considered Roe's appeal. Thus, the decision of this Court to conduct another vote on whether to hear Roe's appeal *en banc*, combined with Judge Cook's participation in that vote, has created the perception that certain members of this Court have manipulated the process to avoid, what was in their view, the unfavorable result of the January 13th poll. This outcome unfortunately conveys the impression of a result-oriented process rather than an orderly process which seeks to preserve the appearance and reality of due process.

**Nos. 04-3044/3066**

**UNITED STATES COURT APPEALS
FOR THE SIXTH CIRCUIT**

JOHN GLENN ROE,

    **Plaintiff-Appellant,**

v.                    **O R D E R**

ROBERT TAFT, Governor, et al.,

    **Defendants-Appellees;**

_____/

Filed: February 2, 2004

**Before: SUHRHEINRICH, SILER, and CLAY, Circuit Judges.**

On January 30, 2004, a majority of the non-recused judges in active service voted *sua sponte* to reconsider and rescind the order of January 13, 2004, granting hearing *en banc* in Case No. 04-3044, and ordering that "all pending motions and filings are referred in the first instance to the assigned panel, for such action as it finds appropriate."

Thus, presently before this panel are the following motions:

(1) Appellant Roe's Motion to Conform the En Banc Court to the requirements of 28 U.S.C.§ 46(c);

(2) Appellant Roe's Motion to Set Aside Judgment and Renewed Motion for Stay of Execution;

(3) Appellant Roe's Motion to Expedite Appeal;

(4) Appellees' Motion to Dismiss the Case for Lack of Jurisdiction; and

(5) Appellees' Renewed Motion to Dismiss Appeal for Lack of Appellate Jurisdiction.

The majority of the panel having previously concluded that Judge Graham properly transferred the § 1983 case to this Court as a request to file a second petition, and having concluded that Roe failed to meet the requirements for filing a second or successive petition under 28 U.S.C. § 2244(b)(2), and having no sound reason to revisit those rulings, we HEREBY **DENY** Appellant Roe's Renewed Motion to Set Aside Judgment and FURTHER **DENY** Roe's Renewed Motion for Stay of Execution. Appellant Roe's Motion to Expedite Appeal is **GRANTED**. Given the En Banc Court's January 30, 2004 order reconsidering and rescinding the order of January 13, 2004, Appellant Roe's Motion to Conform the En Banc Court to the Requirements of 28 U.S.C. § 46(c) is **MOOT**. Appellees' Motion and Renewed Motion to Dismiss the Appeal are **GRANTED.**

    **CLAY, Circuit Judge, dissenting in part.** I dissent from the panel's denial of the motion to stay the execution and the grant of the motion to dismiss the appeal. My reasons for dissenting are set forth in my dissent to the panel's prior order of January 13, 2004, in Case No. 04-3044, and in my dissent to the *en banc* Court's order of January 30, 2004, in Case Nos. 04-3044/3066.

ENTERED BY ORDER OF THE COURT

/s/ Leonard Green

_____
Clerk