*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GARY BRADFORD CONE,

　　　　　　　*Petitioner-Appellant,*

　　　　*v.*

RICKY BELL, Warden, Riverbend Maximum
Security Institution,

　　　　　　　*Respondent-Appellee.*

No. 99-5279

>

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-02312—Jon Phipps McCalla, District Judge.

Argued: November 2, 2006

Decided and Filed: June 19, 2007

Before: MERRITT, RYAN, and NORRIS, Circuit Judges.

---

## COUNSEL

**ARGUED:** Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jennifer L. Smith, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee. **ON BRIEF:** Paul R. Bottei, FEDERAL PUBLIC DEFENDER'S OFFICE, Nashville, Tennessee, for Appellant. Jennifer L. Smith, Michael E. Moore, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellee.

　　　　RYAN, J., delivered the opinion of the court, in which NORRIS, J., joined. MERRITT, J. (pp. 11-17), delivered a separate dissenting opinion.

---

## OPINION

---

　　　　RYAN, Circuit Judge. In 1982, a Tennessee state court sentenced Gary Bradford Cone to death after convicting him of two counts of first degree murder, two counts of murder in the perpetration of a burglary, three counts of assault with intent to commit murder, and one count of robbery by use of deadly force. The jury found Cone had bludgeoned two elderly persons to death while hiding out after a robbery. The Tennessee courts upheld Cone's conviction and sentence on direct appeal and denied his petitions for post-conviction relief. Then, in 2000, Cone filed a petition for a writ of *habeas corpus* in federal district court, which, in due course, was denied. He appealed.

1

We have now heard Cone's appeal three times because the United States Supreme Court has twice reversed our decisions granting relief. This third time around, Cone raises a number of claims, none of which, in our judgment, has merit. Therefore, we will affirm the district court's original judgment denying Cone's petition.

## I.
### A.

The details of Cone's brutal crimes are not material to the issues we address in this appeal, but they are fully set forth in *Cone v. Bell*, 243 F.3d 961 (6th Cir. 2001), *rev'd*, 535 U.S. 685 (2002) (*Cone I*). However, the details of this case's *procedural* history are material to the issues before us on this appeal and we recount them now.

At the time of Cone's conviction, under Tennessee law a jury could impose the death penalty only if it found that the government had proved, beyond a reasonable doubt, the existence of at least one of twelve statutory aggravating factors. Tenn. Code Ann. § 39-2404(i) (1981) (current version at Tenn. Code Ann. § 39-13-204(i) (2006)). In sentencing Cone to death, the jury found four aggravating factors: "[1] The defendant was previously convicted of one or more felonies, other than the present charge, which involve[d] the use or threat of violence to the person[; 2] The defendant knowingly created a great risk of death to two or more persons, other than the victim murdered, during his act of murder [('great risk of death' factor);] . . . [3] The murder was especially heinous, atrocious, or cruel [(HAC)] in that it involved torture or depravity of mind [(HAC factor); and] [4] The murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the defendant or another." *Id.*; *State v. Cone*, 665 S.W.2d 87, 94-95 (Tenn. 1984).

On direct appeal, the Tennessee Supreme Court found that the evidence did not support the jury's finding of the "great risk of death" factor. *Cone*, 665 S.W.2d at 95. However, the court found this error was "harmless beyond a reasonable doubt" because Cone's death sentence was supported by the other three aggravating factors found by the jury and by still another aggravating factor the jury did not find, but which the evidence supported; *viz.* that the murders were committed in perpetration of a burglary. *Id.* The court held that the death sentence was "not in any way disproportionate under all of the circumstances," and affirmed. *Id.* at 95-96. After Tennessee courts denied two post-conviction petitions, *Cone v. State*, 927 S.W.2d 579, 580 (Tenn. Crim. App. 1995), Cone filed a *habeas corpus* petition in federal district court under 28 U.S.C. § 2254, alleging numerous federal constitutional violations. As we have said, the federal district court denied Cone's petition on all claims and Cone appealed.

In 2001, after hearing Cone's first *habeas* appeal, we directed the district court to vacate the death sentence because Cone had been denied constitutionally guaranteed effective assistance of counsel at his sentencing hearing. *Cone*, 243 F.3d at 975-76. We also held that: (1) Cone's allegations that the prosecution had withheld evidence from him in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), had been procedurally defaulted and that Cone had not shown cause and prejudice to overcome this default; (2) even if these *Brady* claims were not procedurally defaulted, the allegedly withheld documents were not *Brady* material; and (3) statements made by the prosecutor during closing argument did not rise to the level of prosecutorial misconduct. *Cone*, 243 F.3d at 968-73. We specifically declined to address Cone's arguments that death by electrocution violates the Eight Amendment's prohibition on cruel and unusual punishment and that the Tennessee jury improperly considered the "great risk of death" and HAC aggravating factors in sentencing him to death. *Id.* at 975. The United States Supreme Court reversed our decision that the assistance provided by Cone's attorney did not meet constitutional minimums and remanded the case back to this court. *Cone I*, 535 U.S. at 702.

We heard Cone's second appeal, on remand, in 2004.  We held that the statutorily defined HAC aggravating factor found by the sentencing jury was unconstitutionally vague.  *Cone v. Bell*, 359 F.3d 785, 797-99 (6th Cir. 2004), *rev'd*, 543 U.S. 447 (2005) (*Cone II*).  Since this error was not harmless, particularly in light of the jurors' erroneous reliance on the "great risk of death" aggravating factor, we granted Cone's petition for *habeas* relief, without addressing any of Cone's other claims.  *Id.* at 799.  The United States Supreme Court again reversed, holding that even if Tennessee's HAC aggravating factor was facially vague, the Tennessee Supreme Court is presumed to have "cure[d] this vagueness by applying a narrowing construction on direct appeal."  *Cone II*, 543 U.S. at 459.  The Supreme Court did not address any other issues and remanded, once again.  *Id.* at 460.

## B.

In this, his third appearance before us, Cone argues that several of his claims for relief remain unresolved.  Without conceding any other claims, Cone's brief focuses on two main claims: (1) that the jury's improper consideration of the HAC and "great risk of death" aggravating factors at sentencing has not been cured and so he deserves a new sentencing hearing; and (2) that we should revisit our first decision's holding that Cone's *Brady* claims are procedurally defaulted, because the Supreme Court has since decided *Banks v. Dretke*, 540 U.S. 668 (2004).  Cone also makes six additional claims:  (3) death by electrocution violates the Eighth Amendment; (4) the prosecutor made false arguments to the jury; (5) Cone received ineffective assistance of counsel; (6) the judge gave misleading jury instructions; (7) women were systematically underrepresented as grand jury forepersons when Cone was indicted; and (8) he was denied the right to counsel during trial.  We address each claim below.

## II.

We review the district court's disposition of a petition for *habeas* relief *de novo*, but review the court's factual findings for clear error only.  *Carter v. Bell*, 218 F.3d 581, 590 (6th Cir. 2000).

Our scope of review is also subject to the law of the case doctrine.  Under that doctrine, when a court explicitly decides an issue of law, that decision should govern the same issue raised in subsequent stages of the same litigation.  *Arizona v. California*, 460 U.S. 605, 618 (1983); *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006).  In other words, when a court resolves an issue by a final decision, that decision binds future court decisions in the same litigation, even those by that same court.  *Bowles v. Russell*, 432 F.3d 668, 676-77 (6th Cir. 2005), *cert. granted*, 127 S. Ct. 763 (2006).  However, the doctrine does not preclude reconsideration of decided issues if the court finds "exceptional circumstances."  *Westside Mothers*, 454 F.3d at 538 (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)).  "Exceptional circumstances" include: "(1) where substantially different evidence is raised on subsequent trial; (2) where a subsequent contrary view of the law is decided by the controlling authority; or (3) where a decision is clearly erroneous and would work a manifest injustice."  *Id.*

We also note that when the Supreme Court remands to our court, "'whatever was before [the Supreme Court], and disposed of by its decree, is considered as finally settled'" and not in our power to rehear.  *Vendo Co. v. Lektro-Vend Corp.*, 434 U.S. 425, 427-28 (1978) (quoting *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895)).

## III.

As a general proposition, we have authority to grant *habeas* relief on a claim adjudicated by a state court if the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The "contrary to" clause means a federal court "may

grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The "unreasonable application" clause means a federal court "may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. We make this determination by looking at whether the state court was objectively unreasonable in applying the federal law, not just whether the court was incorrect. *Id.* at 409.

Cone first claims that he is entitled to relief because the jury weighed two invalid aggravating factors—the HAC factor and the "great risk of death" factor—without any court performing a harmless error analysis or conducting a new sentencing hearing to consider Cone's mitigating evidence and valid aggravating factors.

In a so-called "weighing state" like Tennessee, in which the sentencer balances the aggravating and mitigating factors in making a death sentence determination, a sentence is arbitrary, and in violation of the Eighth Amendment, if the sentencer gives weight to an invalid aggravating factor, even if other valid factors have been found. *Richmond v. Lewis*, 506 U.S. 40, 46 (1992); *Stringer v. Black*, 503 U.S. 222, 230 (1992). However, the Supreme Court has held that a death sentence may still be upheld despite a court's consideration of an invalid aggravating factor if a state appellate court either: (1) reweighed the aggravating factors and mitigating evidence and found that the death sentence is still supported by the evidence; or (2) determined that the jury's consideration of the invalid factor was harmless error beyond a reasonable doubt. *Stringer*, 503 U.S. at 230 (citing *Clemons v. Mississippi*, 494 U.S. 738 (1990)); *Chapman v. California*, 386 U.S. 18, 24 (1967).

In conducting a harmless error analysis, "[a] [state] appellate court may choose to consider whether absent an invalid factor, the jury would have reached the same verdict or it may choose instead to consider whether the result would have been the same had the invalid aggravating factor been precisely defined." *Jones v. United States*, 527 U.S. 373, 402 (1999) (citing *Clemons*, 494 U.S. at 753-54). Either way, the defendant must have received an "individualized sentenc[e]" from the jury, *Stringer*, 503 U.S. at 230, which means that the jury selected the sentence based on "the character of the individual and the circumstances of the crime." *Zant v. Stephens*, 462 U.S. 862, 879 (1983). This determination requires the state appellate court not simply to assume that absent the invalid factor, the jury still would have given a death sentence, *Stringer*, 503 U.S. at 231, but instead, to review the evidence before it, including the mitigating evidence. *See Parker v. Dugger*, 498 U.S. 308, 321-22 (1991).

There is another analytical route by which a court may decide the validity of a death sentence based in part, on an invalid factor. It is the route taken by the United States Supreme Court in rejecting Cone's vagueness challenge to the HAC factor. *Cone II*, 543 U.S. at 459. If a court finds that a factor is invalid because the factor is unconstitutionally vague, a jury's improper reliance on that factor may be "cured" by a state appellate court sufficiently limiting the vague language of the factor by applying a narrowing construction. *See Lambrix v. Singletary*, 520 U.S. 518, 531, 537 n.6 (1997); *Stringer*, 503 U.S. at 230. In other words, "[there are] two distinct and permissible routes to satisfy the Eighth Amendment [prohibition against cruel and unusual punishment] where the sentencer considered a vague aggravator: a court's finding of the aggravator under a proper [narrowing] construction, *or* independent reweighing of the circumstances." *Lambrix*, 520 U.S. at 537 n.6. Therefore, when a state appellate court undertakes to "cure" the sentencer's consideration of an unconstitutionally vague aggravating factor by giving the flawed factor a narrowing construction, that is the end of it, and no further harmless error analysis is necessary. *Lambrix*, 520 U.S. at 537 n.6; *Richmond*, 506 U.S. at 47.

In its last decision in this case, the United States Supreme Court held that even assuming that the HAC factor relied on by the sentencing jury in Cone's case was facially vague, the Tennessee Supreme Court should be *presumed* to have applied a narrowing construction. *Cone II*, 543 U.S. at 456-58. Therefore, the Court reasoned, the presumed narrowing of the presumptively unconstitutional HAC factor rendered the factor's vague language constitutionally sufficient. *Id.* at 459-60. The Court concluded that the Tennessee court's affirmance of Cone's death sentence on this issue was "not contrary to . . . clearly established Federal law" and *habeas* relief should not be granted. *Id.* at 460.

These findings by the Supreme Court close the HAC aggravating factor issue and we find that the jury's reliance on the HAC factor in sentencing Cone does not constitute a constitutional infirmity. Cone's argument to the contrary—that he should get relief because the jury considered the vague HAC factor and no court found this error harmless or conducted a new sentencing calculus—misreads Supreme Court precedent. As we have said, because the Supreme Court presumed that the Tennessee Supreme Court applied a narrowing construction, *Cone II*, 543 U.S. at 456-58, any error by the jury in relying on this factor was "cured." *See Richmond*, 506 U.S. at 47.

We also reject Cone's claim that he deserves a new sentencing hearing because the jury erroneously relied on the "great risk of death" factor. It is true that the Tennessee Supreme Court acknowledged that the jury finding on this factor was not supported by the evidence, but Cone is not entitled to a new sentence unless the Tennessee Supreme Court did not (1) conduct a proper harmless error analysis; *or* (2) reweigh the mitigating and aggravating factors in examining his sentence. *Stringer*, 503 U.S. at 230. Tennessee appellate courts generally do not reweigh, but instead conduct a harmless error analysis when faced with jury reliance on an invalid sentencing factor. *State v. Howell*, 868 S.W.2d 238, 259-61 (Tenn. 1993). As the *Howell* court recognized, the Tennessee Supreme Court did just such an analysis in this case. *See id.* at 260 (citing *Cone*, 665 S.W.2d 87). The Tennessee Supreme Court explicitly decided that the jury's consideration of the "great risk of death" factor "was harmless beyond a reasonable doubt and does not warrant the granting of a new sentencing hearing." *Cone*, 665 S.W.2d at 95.

While the Tennessee Supreme Court's statement that it found harmless error is significant in our upholding that decision, *see Sochor v. Florida*, 504 U.S. 527, 540-41 (1992), the opinion further demonstrates that the court performed a proper harmless error analysis. Although the Court's opinion does not spell out its harmless error analysis in explicit terms, in discussing the jury's erroneous consideration of the "great risk of death" factor, the opinion examines the evidence supporting each aggravating circumstance found by the jury and finds that the other aggravating circumstances "were clearly shown by the evidence." *Cone*, 665 S.W.2d at 94. Earlier in the opinion, in a section immediately preceding a discussion of the claims Cone raised on appeal, the court explicitly discussed the mitigating evidence presented by Cone at trial and the contrary evidence presented by the government on that issue. *Id.* at 92. The court concluded: "[W]e have reviewed the sentence of death in this case and are of the opinion that it is not in any way disproportionate under all of the circumstances." *Id.* at 95. The court's analysis shows that it looked at "whether absent [the] invalid ["great risk of death"] factor, the jury would have reached the same verdict," *see Jones*, 527 U.S. at 402, and found that the sentence was appropriate. Contrary to Cone's claims, the court did not just "assume it would have made no difference if the thumb had been removed from death's side of the scale." *Stringer*, 503 U.S. at 232. Therefore, Cone has failed to establish that the Tennessee Supreme Court's affirmance of his death sentence was contrary to clearly established law and, therefore, we may not grant relief on this claim.

## IV.

Cone's second claim raises an issue previously decided by this court: whether the state prosecutors withheld evidence from Cone in violation of *Brady*, 373 U.S. 83. The *Brady* rule requires the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). A government violation of this rule is grounds for setting aside a conviction or sentence only if the failure to disclose the relevant evidence "undermines confidence in the verdict, because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

Cone's claim is actually better described as four separate *Brady* claims because Cone asserts that four groups of documents were withheld from him in violation of *Brady*. They are: (1) evidence regarding his drug use; (2) evidence that might have been useful to impeach the testimony and credibility of prosecution witness Sergeant Ralph Roby; (3) FBI reports; and (4) evidence showing that prosecution witness Ilene Blankman was untruthful and biased. We examined these four claims in our first opinion and found that each one had been procedurally defaulted. *Cone*, 243 F.3d at 968-70. Three of the claims had been procedurally defaulted because the Tennessee state court held the claims were previously determined or waived and that holding amounted to an independent and adequate state law ground barring our considering the claims. *Id.* The remaining claim, the FBI reports, had been procedurally defaulted because Cone failed to argue it in state court. *Id.* at 970. Cone also did not overcome this procedural default by showing both (a) reasonable cause for his failure to timely raise these claims, and (b) unfair prejudice from the withholding of the documents. *Id.* at 971. We held that Cone had not shown cause *or* prejudice for his first, second, and fourth *Brady* claims, and while he had shown cause for his third claim, the FBI reports, he had not shown any prejudice. *Id.* Therefore, we held that Cone's *Brady* claims were not properly before us. In the alternative, we held that even if Cone could establish cause and prejudice to overcome his procedural default, "we are satisfied that the documents Cone complains were withheld are not *Brady* material." *Id.* at 968.

Given these prior rulings, we may not, because of the law of the case doctrine, reconsider Cone's *Brady* claims unless "'exceptional circumstances'" exist. *Westside Mothers*, 454 F.3d at 538 (citation omitted). Cone argues that the Supreme Court's decision in *Banks v. Dretke*, 540 U.S. 668, provides the necessary "exceptional circumstance[]" because it decided a "subsequent contrary view of the law" after our first decision in Cone's case. *See Westside Mothers*, 454 F.3d at 538. According to Cone, *Banks* "held that when the state withholds evidence which is material to a jury's death-sentencing determination, a petitioner has 'cause and prejudice' for any failure to timely present such claims in state court." Since the prosecution withheld mitigating evidence, Cone argues he had "cause and prejudice" under *Banks*. We disagree.

Contrary to Cone's arguments, *Banks* does not require us to review our prior findings. In *Banks*, the Supreme Court, citing *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999), stated the familiar rule for overcoming procedural default: that the petitioner must show cause and prejudice. *Banks*, 540 U.S. at 691. The Court recounted that a petitioner shows "cause" when he demonstrates that his failure to develop facts in the state court proceedings was due to the prosecution's suppression of the relevant evidence and "prejudice" "when the suppressed evidence is 'material' for *Brady* purposes." *Id.* (quoting *Strickler*, 527 U.S. at 282). The *Banks* Court then analyzed each of these factors separately to find cause and prejudice. *Id.* at 692-703. The Court did not find cause and prejudice *solely* because the prosecution withheld evidence. Therefore, the Supreme Court did not decide a "subsequent contrary view of the law" that would lead us to disregard the law of the case here.

Furthermore, any attempt by Cone to analogize *Banks* to his case is misplaced because the Court's finding of cause and prejudice in *Banks* is distinguishable from Cone's case. The Supreme Court found that Banks showed "cause" by proving three factors: (a) the prosecution withheld exculpatory evidence; (b) Banks reasonably relied on the prosecution's open file policy to fulfill its *Brady* responsibilities; and (c) the State confirmed Banks's reliance on the prosecution's representation that it had disclosed all *Brady* material. *Banks*, 540 U.S. at 692-93. The Court concluded: "In short, because the State persisted in hiding [the witness's] informant status and misleadingly represented that it had complied in full with its *Brady* disclosure obligations, Banks had cause for failing to investigate, in state postconviction proceedings, [the witness's] connections to [the police]." *Id.* at 693. This circuit has held that "prosecutorial concealment and misrepresentation" was key to the *Banks* holding and rejected a petitioner's argument that the prosecution's withholding of documents alone, *i.e.*, without prosecutorial misconduct, demonstrates cause. *Harbison v. Bell*, 408 F.3d 823, 833 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 1888 (2006).

This distinction is applicable here. Cone has not presented any evidence of prosecutorial concealment or shown his reliance on false prosecutor statements. Instead, he summarily concludes that *Banks* supplies the necessary cause without explaining how the facts of his case match Banks' case. *Banks* thereby does not give us reason to revisit our prior decision that three of Cone's *Brady* claims lack cause for his procedural default.

In *Banks*, the Court found "prejudice" because the government witness, whose testimony may have been impeached with the withheld *Brady* material, presented evidence on a key element of the case and was not corroborated by another witness. *Banks*, 540 U.S. at 700. The Court found this uncorroborated testimony on a key issue combined with the prosecutor's misrepresentations and concealment of the issue showed a reasonable probability that the outcome of the case would have been different if Banks had received the withheld evidence. *Id.* at 699-701.

But Cone has not made a similar showing. In his most recent brief, claiming that his receiving the withheld evidence would have resulted in a different sentence, Cone has made only conclusory arguments. Cone introduced considerable evidence that he had a drug habit, *Cone*, 665 S.W.2d at 92, and so we have no basis to conclude that the result of his trial would have come out differently had the *Brady* evidence been given to him. *See Coe*, 161 F.3d at 344. *Banks* thereby does not give us reason to revisit our prior decision that Cone has not shown prejudice. We therefore will not disturb our decision that Cone's *Brady* claims are procedurally defaulted and not before this court.

Cone argues in the alternative that even without a showing of "cause and prejudice" this court can review three of his *Brady* claims—the mitigating drug evidence, the Roby impeachment testimony, and the Blankman testimony—because those claims were not procedurally defaulted under state law.

It is well settled that a *habeas* petitioner must exhaust his available remedies in state court before a federal court may grant *habeas* relief. 28 U.S.C. § 2254(b)(1)(A). If the state court decides the petitioner's claims on an adequate and independent state ground, such as a state procedural rule, the petitioner's claims are considered procedurally defaulted and he is barred from seeking federal *habeas* relief. *Wainright v. Sykes*, 433 U.S. 72, 86-87 (1977). Under Tennessee law, grounds for relief which have been "waived or previously determined" are not cognizable in a state post-conviction action. Tenn. Code Ann. § 40-30-112 (1990) (since repealed). The Tennessee courts held that Cone's *Brady* claims were previously determined under this rule, *State v. Cone*, No. P-06874 (Tenn. Crim. Ct. filed December 16, 1993) *aff'd* 927 S.W.2d 579 (Tenn. Crim. App.1995), and we found that Cone's claims were therefore procedurally defaulted. *Cone*, 243 F.3d at 969-70.

Cone looks to *Hathorn v. Lovorn*, 457 U.S. 255 (1982), to challenge our finding of procedural default. While the general rule is that a petitioner's failure to comply with a state procedural rule may constitute an independent and adequate state ground of decision and bar a federal court's review of a federal question raised in state court, *Hathorn* held that a federal court will not be prevented from hearing a federal question raised in state court if the state court did not follow established state procedural rules. *Id.* at 262-63. Therefore, Cone argues, if the Tennessee court rested its finding that Cone's three *Brady* claims were previously determined upon a Tennessee procedural rule that was not "'firmly established and regularly followed,'" *Hutchison v. Bell*, 303 F.3d 720, 737 (6th Cir. 2002) (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)), then no independent and adequate state ground precludes this court from reviewing Cone's three *Brady* claims.

While we do not take issue with Cone's statement of the general rule, we find it is inapplicable to his case. We have already decided that Cone's claims are procedurally defaulted and so we would need to find an "exceptional circumstance[]" to revisit that decision. *Westside Mothers*, 454 F.3d at 538. We do not find any such circumstance. Even if we were disposed to ignore our prior decision on this issue, we find that Cone's argument has no merit. To determine whether a state procedural rule is firmly established, a court looks at "whether, at the time of the petitioner's actions giving rise to the default, the petitioner 'could not be deemed to have been apprised of [the rule's] existence.'" *Hutchison*, 303 F.3d at 737 (quoting *Ford*, 498 U.S. at 423). The petitioner must demonstrate more than "'[a]n occasional act of grace by a state court in excusing or disregarding a state procedural rule' in order for a federal court to conclude that the state procedural rule is inadequate because inconsistently applied." *Id.* (quoting *Coleman v. Mitchell*, 268 F.3d 417, 429 (6th Cir. 2001)).

Cone has not shown that Tennessee did not consistently follow its procedural rules such that we should have disregarded Tennessee's finding that his *Brady* claims were previously determined. While Cone cites a few cases in an attempt to show inconsistent application of Tennessee's procedural rules, they do not support the claim that Tennessee's waiver rule was not "'firmly established and regularly followed.'" *Hutchison*, 303 F.3d at 737 (citation omitted). Rather, the rules were firmly established and the Tennessee courts applied them here. We again find that Cone's claims are procedurally defaulted and we reject Cone's request to reconsider his *Brady* claims.

The dissent challenges our reliance on the law of the case doctrine, arguing that, on this third appeal, we should find our prior holding of procedural default no longer valid because Cone's *Brady* claims have never been decided by a court. The Tennessee courts found that Cone's *Brady* claims were "previously determined" and, therefore, not cognizable in Cone's state post-conviction action, *Cone v. State*, No. P-06874 (Tenn. Crim. Ct. filed Dec. 16, 1993), *aff'd*, 927 S.W.2d 579 (Tenn. Crim. App. 1995). However, after an impressively close scrutiny of the enormous state court record, our brother finds as a matter of fact that the Tennessee trial and appellate courts have repeatedly misstated the record. Our brother's fact-finding raises interesting questions as to a federal appellate court's authority on review of the denial of a *habeas* petition to make its own findings of fact contradicting a state court's findings on the contents of the state court record.

We need not be delayed by these interesting questions of federalism, however, because, in all events, the documents discussed in the dissenting opinion that were allegedly withheld are not *Brady* material. We said this before in *Cone*, 243 F.3d at 968-70, and we now say it again. A review of the allegedly withheld documents shows that this evidence would not have overcome the overwhelming evidence of Cone's guilt in committing a brutal double murder and the persuasive testimony that Cone was not under the influence of drugs. The dissent narrowly focuses on Sergeant Roby's testimony that "he knew of no evidence of drug addiction or abuse," dissent p. 13, and FBI Agent Eugene Flynn's testimony that he had "found no evidence of drug addiction," dissent p. 13.

The dissent's argument, apparently, is that some of the undisclosed documents were prior inconsistent statements by Roby and Flynn that could have been used to impeach their credibility. While it is far from clear that these documents were indeed prior inconsistencies by Roby and Flynn, even if they were, they would have been admissible under Tennessee law, only to impeach veracity and not for their truth. *See Dailey v. Baseman*, 937 S.W.2d 927, 930 (Tenn. Ct. App. 1996). The third category of undisclosed documents are said to be (1) hearsay statements by Chief Daniels to Memphis police investigators that Cone "was a heavy drug user," and (2) statements by "[t]hree other witnesses" that the day before the murder, Cone looked "weird" and on drugs, or "wild-eyed." Dissent, p. 13.

It would not have been news to the jurors, that Cone was a "drug user." They had already heard substantial direct evidence that he was a drug user, including the opinion of two expert witnesses, the testimony of Cone's mother, drugs found in Cone's car, and photographic evidence. Despite this evidence, the jurors concluded that Cone's prior drug use did not vitiate his specific intent to murder his victims and did not mitigate his culpability sufficient to avoid the death sentence. In short, the allegedly withheld evidence catalogued by the dissent does not "undermine confidence in the verdict because there is [not] a reasonable probability that there would have been a different result had the evidence been disclosed," *see Coe*, 161 F.3d at 344, and so we reject Cone's *Brady* claims.

## V.

Cone's third claim is that death by electrocution violates the Eighth Amendment. We explicitly did not address this claim in our first decision, *Cone*, 243 F.3d at 975, and so we address it now for the first time. The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. In Tennessee, electrocution was the only method of execution until 1999 when the legislature made lethal injection the default method, but gave inmates a choice of electrocution if they had committed their crime before January 1, 1999. Tenn. Code Ann. § 40-23-114. The Supreme Court has declared that in a state where the default method of execution is lethal injection and a person chooses to be executed by lethal gas that person has waived any objection he may have to the method of lethal gas. *Stewart v. LaGrand*, 526 U.S. 115, 119 (1999).

Cone, who committed his crimes in 1980, has chosen electrocution over lethal injection and now argues that electrocution violates the Eighth Amendment's prohibition on cruel and unusual punishment. Since Cone selected a method of execution different from the state's default method, his objections to his chosen method of execution are waived and we do not reach the merits of his claim. *See id.* We note that even if Cone's claim could move forward, neither the Supreme Court nor this circuit has concluded that electrocution offends "'the evolving standards of decency that mark the progress of a maturing society,'" *Roper v. Simmons*, 543 U.S. 551, 561 (2005) (citation omitted), and constitutes cruel and unusual punishment. *Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004), *cert. denied*, 544 U.S. 1003 (2005); *In re Sapp*, 118 F.3d 460, 464 (6th Cir. 1997); *see also In re Kemmler*, 136 U.S. 436, 443 (1890).

We decline to grant relief on Cone's Eighth Amendment claim.

## VI.

Cone has a number of remaining claims: (1) the prosecutor made false arguments to the jury; (2) Cone received ineffective assistance of counsel; (3) the judge gave misleading jury instructions; (4) women were systematically underrepresented as grand jury forepersons when Cone was indicted; and (5) Cone was denied the right to counsel during trial.

We have previously decided the first of Cone's remaining claims and there are no "'exceptional circumstances,'" *Westside Mothers*, 454 F.3d at 538 (citation omitted), that would warrant our not following the law of the case. In our first decision we held:

> We find that the statements made by the prosecutor referring to Cone as a drug seller are not material, and we agree with the district court that the statement was too remote from the real issues in this case to have affected the jury's deliberations. Cone's drug psychosis defense was not substantially undercut by the prosecutor's remarks; rather, Cone simply did not present credible evidence that he was using drugs at the time he committed the murders. Under 28 U.S.C. § 2254(d), this decision does not appear to be contrary to, or involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court.

*Cone*, 243 F.3d at 973. As we have already decided this issue, we reject Cone's request to reconsider this claim.

We are also precluded under the law of the case doctrine from considering Cone's claim that he received ineffective assistance of counsel. Cone raised only two ineffective assistance of counsel claims in his first post-conviction relief petition: (a) the failure of counsel to object during the State's argument at sentencing; and (b) the failure of counsel to present evidence in mitigation at the sentencing phase of the trial. We may not consider either of these claims because the United States Supreme Court has held that the Tennessee courts did not err in rejecting Cone's Sixth Amendment arguments on these issues. *Cone I*, 535 U.S. at 697, 700-02.

Any other ineffective assistance of counsel claims by Cone are procedurally barred because they were not raised until Cone's second petition for post-conviction review. A petitioner must exhaust his available remedies in state court before a federal court may grant post-conviction relief. 28 U.S.C. § 2254(b)(1)(A). As previously discussed, if the state court decides the petitioner's claims on an adequate and independent state ground, such as a procedural rule, the petitioner's claims are considered procedurally defaulted and he is barred from seeking federal *habeas* review. *Wainwright*, 433 U.S. at 86-87. Under Tennessee law at the time, a claim not brought in a prior proceeding is presumed to be waived. Tenn. Code Ann. § 40-30-112(b)(2) (1990) (since repealed). Cone has not shown "cause and prejudice" to excuse the default. Therefore, his ineffective assistance claims raised in later petitions are procedurally barred.

Cone's claim of denial of counsel at trial suffers a similar fate. Cone specifically claims that he was denied his Sixth Amendment right to counsel by not being allowed to sit at counsel table during trial. This claim was not raised until an amendment to his second state post-conviction petition, rather than his first petition, and so it is procedurally defaulted. Cone has not made any attempt to show "cause and prejudice" for this claim and so we may not reach it.

Cone admits that his remaining two claims—misleading jury instructions and grand jury sex discrimination—fail under a prior decision of this court. *See Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). In *Coe v. Bell*, we approved a jury instruction regarding unanimity identical to the one used in Cone's case and we also held that it was not error for a district court to hold that a male defendant lacked standing to raise a claim of discrimination against females in jury selection. *Coe*, 161 F.3d at 337-39, 352-53. Since Cone admits that *Coe* controls his claims, that is the end of the matter.

## VII.

Cone's petition for federal *habeas* relief has come before this court for a third time. We find that the law of the case directs us to **AFFIRM** once again the denial of those claims we have previously addressed and decided.

We **AFFIRM** the district court's rejection of Cone's remaining claims for the reasons we have given, and deny the petition for *habeas* relief.

---

**DISSENT**

---

MERRITT, Circuit Judge, dissenting.  At least three serious problems exist in this case. First, the State deliberately concealed mitigating evidence of Cone's drug addiction and mental illness in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  As will be demonstrated below, the bulletins and teletypes sent out by the police at the time of the murders clearly show that the police believed Cone to be a drug addict.

Second, embedded within the *Brady* problem is the majority's failure to acknowledge and follow the long-established, bedrock principle of mitigation under the Eighth Amendment that forbids a state sentencing process that limits or proscribes the full consideration of addiction or other mitigating evidence by the jury.  That principle was reiterated and explained once again by the Supreme Court as recently as April 25, 2007, in *Abdul-Kabir v.* Quarterman, 550 U.S. \_\_\_\_, 127 S. Ct. 1654 (2007).  In that case, the Court stated in the text and accompanying footnote its holding that applies equally to Cone's claim:

> the basic legal principle that continues to govern such [mitigation] cases:  The jury must have a 'meaningful basis to consider the relevant mitigating qualities' of the defendant's proffered evidence[21]
> > 21.     A jury may be precluded from doing so not only as a result of the instructions it is given, *but also as a result of prosecutorial argument . . . .*"

127 S. Ct. at 1671 n.21 (emphasis added, citations omitted).  In the present case the trial prosecutor's argument, outlined below, combined with his concealment of mitigating evidence, prevented the jury from giving effect to Cone's evidence of drug addiction which arose  from a post-traumatic stress disorder from the Vietnam War.

Third, the majority fails to acknowledge that we were wrong in our earlier reliance on procedural default on Cone's claim that the State concealed mitigating evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  I — and I believe my colleagues, as well — originally failed to understand the record correctly.  The basic problem, as will be explained below, is that Cone presented a colorable *Brady* claim in the 1993 state habeas proceedings within a few months of discovering the documents wrongfully withheld by the State prosecutors.  Cone presented this *Brady* claim as an amendment to his second post-conviction petition along with the 51 other pending claims.  The claim was overlooked in the press of other claims, and the State trial court and Court of Appeals mistakenly asserted that the claims had been "previously determined" at earlier stages of the review process.  In fact, Cone's lawyer had discovered the present *Brady* claim just before he filed it; it had not been previously presented or adjudicated.  And to make matters worse, no court, state or federal, has as yet reviewed the claim on the merits.  Four courts — two state courts and two federal courts — have now misconstrued the record and declined to hear the merits after invoking the doctrine of "procedural default."  These kinds of errors are risks that we all run — lawyers and judges alike — when presented with a large mass of claims and arguments, especially in death penalty litigation, a dense and difficult field.

The failures of the state and federal judiciaries to consider the claim properly were caused by the misrepresentations of the record in the case by the Tennessee Attorney General and his appellate staff.  The majority does not acknowledge, analyze or seek to provide a remedy for the complete falsification of the procedural record in this case by the Tennessee Attorney General's appellate counsel concerning the State's procedural default defense to the *Brady* claim.  I will

outline below the unacceptable conduct engaged in by the State's appellate prosecutors in this litigation.

We should reverse our previous erroneous decision invoking procedural default and remand the case to the District Court for a full review of the merits of Cone's claim that combines a *Brady* violation together with an Eighth Amendment mitigation violation. I will briefly explain the claim and then how the mistake was made in each of the four courts that led them erroneously to invoke procedural default rather than reach the merits. Cone deserves a full hearing on the merits of his claim in the District Court. I would not resolve the other complex claims in the case until the *Brady*-mitigation claim is fully litigated in the District Court on the merits.

## I. Cone's *Brady* Claim

In 1980, Gary Cone, who has a high IQ and a college education, committed an unprovoked brutal murder in Memphis. Before that, he fought in the Viet Nam conflict, received a bronze star for bravery in combat, and came home with a mental illness. He returned addicted to drugs and suffering from a serious post-traumatic, wartime stress disorder. The State prosecutor decided to seek the death penalty despite the mitigating evidence and needed to undermine any possible feelings of sympathy that a juror might have for such a mentally ill man guilty of a brutal murder. The prosecutor wanted the jury to feel a strong sense that it should seek retribution for the murder by imposing a sentence of death. In final argument at the guilt phase of the trial, the prosecutor falsely dismissed Cone's mental illness and argued that Cone "says he's a drug addict," but "I say baloney." During the final argument, the prosecutor flatly told the jury that there was no evidence of drug addiction and, therefore, no mitigating evidence. He reminded them that the State's medical experts "saw no evidence of any kind, any extent of mental disease or defect" from drug use or any other form of post-traumatic stress syndrome. (App. 150.) The prosecutor repeated the testimony of a witness, Ilene Blankman, that there was no such evidence of drug abuse. (App. 158.)

The prosecutor did not want evidence inconsistent with this theory of the case to come before the jury. So far as the prosecutor was concerned, Cone was a perfectly intelligent and normal but evil man who should be executed for the good of society. The prosecutor did not answer Cone's motion for exculpatory evidence of drug addiction or mental illness by turning over the substantial mitigating evidence that the State had in its files. The prosecutor was successful in undermining any feelings that Cone's mental illness and drug addiction were mitigating reasons for sparing his life. In rejecting what it called Cone's "tenuous defense, at best," and affirming the death sentence in 1984, the Tennessee Supreme Court explained that the only evidence of drug addiction and mental illness that the jury heard was "based purely on his [Cone's] personal recitation," and that his "known pattern of conduct" and "the testimony of several witnesses" "raised serious doubts" that he "was under the influence of or experiencing withdrawal from drugs" about his mental illness and drug addiction, the Tennessee Supreme Court said:

> The only defense interposed on his behalf was that of insanity, or lack of mental capacity, due to drug abuse and to stress arising out of his previous service in the Vietnamese war, some eleven years prior to the events involved in this case. This proved to be a tenuous defense, at best, since neither of the expert witnesses who testified on his behalf had ever seen or heard of him until a few weeks prior to the trial. Neither was a medical doctor or psychiatrist, and neither had purported to treat him as a patient. *Their testimony that he lacked mental capacity was based purely upon his personal recitation to them of his history of military service and drug abuse*.

*Cone v. Bell*, 665 S.W.2d 87, 90 (Tenn. 1984) (emphasis added). The prosecutors, trial and appellate, convinced both the jury and the Supreme Court that there was no mitigating evidence.

(In Tennessee, the trial prosecutor comes from the local district attorney's office, and appellate and habeas counsel come from the Tennessee Attorney General's staff.)

The exculpatory evidence of drug addiction and mental illness lay in the files of the State police and prosecutor's offices undiscovered by Cone's lawyers. Then, eight years after the opinion of the Tennessee Supreme Court, over the strong, persistent objection of State prosecutors in the State Attorney General's Office, these files became available for the first time as a result of a decision by Judge Cantrell in the Tennessee Court of Appeals, *Capital Case Resource Center of Tennessee, Inc. v. Woodall*, No. 01-A-019104CH00150, 1992 WL 12217 (Jan. 29, 1992), holding that such police records must be made available under the Tennessee Public Records Act. Based on this decision, Cone's lawyers searched through these records and found for the first time mitigating evidence that the State prosecutor had refused to disclose in response to the motion for exculpatory evidence.

When Sergeant Roby of the Memphis Police Department testified at the trial that he knew of no evidence of drug addiction or abuse, he also knew that he had sent out on August 10 and 11, 1980, detailed teletype all-points-bulletins to police departments around the country saying that Cone was armed, extremely dangerous and a drug user whose car contained "a large quantity of drugs." (App. 513, 515.) On August 12, he sent out a more detailed bulletin to selected police departments saying that Cone was "believed [to be a] heavy drug user." (App. 517-26.) These three police bulletins could have been used by defense counsel during trial to undermine Sergeant Roby's credibility, as well as to establish that it was not "baloney" that Cone had the reputation for "heavy drug use." The undisclosed evidence supported the testimony of Cone's two experts concerning his heavy drug use and his mental illness. The documents tended to undermine the State's two expert witnesses who denied extensive drug use and mental illness. I do not agree with the majority that these documents containing mitigating evidence of drug addiction are not *Brady* material.

Police records also reflect that on August 11, 1980, the police chief of the town where Cone previously lived, Chief Daniels of the Lake Village, Arkansas, police department, advised the Memphis police investigators that Cone "was a heavy drug user." (App. 450.) Three other witnesses to events advised the police investigators that Cone appeared "weird" and on drugs or "looked wild-eyed" the day before the murders. (App. 449.)

The same problem exists with FBI Agent Flynn's testimony. He also testified that he found no evidence of drug addiction. Later-disclosed FBI documents contained teletypes sent around the country prior to Cone's arrest that refer to him as an "armed and dangerous drug user" and "subject believed heavy drug user." Cone has now produced ten such teletypes or letters. (App. 450-52.) I do not agree with the majority that these documents are not *Brady* material. Flynn, as the agent investigating the case, had to know that Cone had a reputation as a heavy drug user and that FBI documents so described him. Cone believes that this long string of FBI documents would have undermined Flynn's trial testimony, as well as the testimony of the State's two medical experts, and would have supported the testimony of Cone's medical experts. If one or more jurors had believed that Cone was suffering from a post-traumatic combat stress mental illness and drug addiction — instead of believing it was just "baloney," as the trial prosecutor and the Attorney General's office insist — it is unlikely that the jury would have reached a verdict of death.

## II. Eighth Amendment Mitigation Requirement

In this death penalty case, the constitutional right to show drug addiction in mitigation is particularly important because this was Cone's only way to prove a sufficient lack of mental capacity to avoid the jury's imposition of death in retribution for a brutal murder. In *Lockett v. Ohio*, 438 U.S. 586 (1978), the Supreme Court stated "the Ohio death penalty statute does not permit the type of individualized consideration of mitigating factors we now hold to be required by the Eighth

and Fourteenth Amendments." *Lockett*, therefore, absolutely forbids a state sentencing process that limits or proscribes the full consideration of addiction and other mitigators by the sentencer. By ruling immaterial the documented proof of addiction contradicting the prosecution's "baloney" argument, the State and our court are permitting the execution of Cone in violation not only of *Brady* but also the Eighth Amendment's mitigation line of death penalty cases, ending with *Abdul-Kabir*, quoted above. In its companion mitigation case, *Brewer v. Quarterman*, 505 U.S. ____, 127 S. Ct. 1706 (2007), the Court stated that "there is surely a reasonable likelihood that the jurors accepted the prosecutor's argument at the close of the sentencing hearing" that Brewer's mitigating evidence of drug abuse and mental illness was irrelevant to the issues. The Court went on to say that the prosecutor told the jury that "all they needed to decide was whether Brewer had acted deliberately and would likely be dangerous in the future, necessarily disregarding any independent concern that, given Brewer's troubled background, he may not be deserving of a death sentence." 127 S. Ct. at 1712. Cone's claim in this case is much stronger than *Brewer's* because the prosecution here not only misinterpreted the law, as in *Brewer*, but falsified the factual record. Cone should be allowed to advance his argument in mitigation that he does not deserve the death penalty. He should be allowed to go forward on the merits with his argument that the State has concealed mitigating evidence in violation of *Brady*.

### III. The Procedural Default Mistake

There is no question in this case that counsel for Cone filed before trial an extensive three-page "Motion for Production of Exculpatory Evidence" that covered the waterfront of exculpatory material, as well as a "Motion for Disclosure of Impeaching Information." (App., Add. 1, doc. 1, pp. 54-56, 98-99.) The State does not claim that Cone did not request before trial the type of exculpatory evidence withheld from Cone.

Our Court's earlier mistaken ruling that the doctrine of procedural default barred the *Brady* claim was based on false statements of the record by the Tennessee Attorney General's office in its brief in this Court and by incorrect statements from the record by two Tennessee courts. In its brief before this Court, the State argues that the *Brady* claim "is clearly procedurally defaulted" because "Cone's *Brady* claims were simply never raised in the state court." (Final brief, pp. 12-13.) This "simply never raised" statement can itself only be characterized as a deliberate falsehood. On October 5, 1993, soon after counsel for Cone learned of the existence of the exculpatory statements, counsel filed an amendment to his second petition for post-conviction relief in the criminal court of Tennessee at Memphis in which Cone was originally sentenced to death. The amendment's paragraph 41 stated the *Brady* claim as follows:

### Additional Claims for Review

41. Petitioner was denied his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 6, 7, 8, 9, 10, 11, 14, 16 and 17 of the Tennessee Constitution, *because the State withheld exculpatory evidence which demonstrated that petitioner that petitioner* [sic] *did in fact suffer drug problems and/or drug withdrawal or psychosis both at the time of the offense and in the past,* such evidence including, but not limited to, statements of Charles and Debbie Slaughter, statements of Sue Cone, statements of Lucille Tuech, statements of Herschel Dalton, and patrolman Collins, and other persons unknown at this time, such statements contained in official police reports, and/or contained in other documents unknown and/or through personal recollections of officers or others. Such evidence was highly exculpatory and exculpatory to both the jury's determination of petitioner's guilt and its consideration of the proper sentence. There is a reasonable probability that, had the evidence not been withheld,

the jurors would not have convicted petitioner and would not have sentenced him to death.

(App. 2006) (emphasis added).

Two months later on December 16, 1993, the Criminal Court in Memphis, "William H. Williams, Senior Judge," dismissed this paragraph 41 *Brady* claim stating only:

The petitioner, by way of his Third Amendment [to the second post-conviction petition] , continues with grounds *41*, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51 and 52, all of which grounds are clearly re-statements of previous grounds *heretofore determined* and denied by the Tennessee Supreme court and upon Direct Appeal or the Court of Criminal Appeals upon the First Petitioner.

(App. Add. 4, p. 233) (emphasis added). Judge Williams did not cite or attempt to point out when or how or what court had "previously determined" the claim. In fact, the *Brady* claim is never mentioned by the Tennessee courts in any previous opinion or order, including the Tennessee Supreme Court opinion on direct appeal quoted above, the trial court order on the first post-conviction petition, *Cone v. State*, No. P-3653 (Tenn. Crim. Ct. at Memphis, Sept. 19, 1986) (App. 1954) (mentioning only claims of prosecutorial misconduct and ineffective assistance of counsel), or the Tennessee Court of Appeals opinion affirming the denial of the first post-conviction petition on the same grounds, *Cone v. State*, 747 S.W.2d 353 (Tenn. Ct. Crim. App. 1987). Had Judge Williams read paragraph 41 closely, or made inquiry, or conducted a hearing, or asked for briefs, it would have been obvious that the material had only recently been discovered and the new claim could not possibly have been "previously determined." The State prosecutors at the trial and appellate levels had been concealing the mitigating evidence for 10 years since the trial.

If the inattentive and unfocused treatment of a capital defendant's *Brady*-mitigation claim in the Memphis trial court shows a broken judicial system unable to cope with its responsibilities in capital litigation, the treatment of the claim on review in the Tennessee Court of Criminal Appeals was worse. At least Judge Williams did not excoriate *pro bono* defense lawyers for diligently pursuing their duty to represent Cone. In Cone's appellate brief in the Tennessee Court of Criminal Appeals, filed August 22, 1994, counsel pointed out that the trial court was clearly in error. Counsel pointed out that the trial court did not address or examine "each individual issue" and that a reading of the decisions "clearly shows that the issues were neither presented on direct appeal nor addressed in the initial post-conviction petition." (App. Add. 4, p. 16.) But, in a brief opinion, the Tennessee Court of Criminal Appeals, like the trial court, did not specifically address the *Brady*-mitigation issues. The opinion begins:

Appellant contends that the trial court's dismissal of his second petition was premature, because . . . the trial court declined to hold an evidentiary hearing . . . . Our conclusion as to the timeliness of the trial court's dismissal is therefore dependent on our resolution of the substantive issues of waiver and previous determination.

. . . .

Had Judge Williams not provided this court with such an exemplary and meticulous treatment of the appellant's petition, our task in reviewing the relevant issues would have been difficult if not insurmountable.

. . . .

The trial court found that most of the appellant's stated grounds for relief, in addition to being repetitious and cumulative, were previously determined either on direct appeal or in the appellant's first petition.

*Cone v. State*, 927 S.W.2d 579, 580-81 (1995).  After denying all of the claims without specifically addressing them, the Tennessee Court of Criminal Appeals then criticized Cone's lawyers:

[T]he appellant should not be able to extend the post-conviction process and delay the administration of justice *ad infinitum* by filing subsequent petitions which disingenuously claim that the grounds asserted were unknown to the appellant when his previous petition was filed.

*Id*. at 582.  The Court then says that counsel's "perpetual disrespect for the finality of convictions disparages the entire criminal justice system" and further complains about counsel's conduct: "The courts, the executive branch of the government, the legal profession, and the public have been seriously inconvenienced by the prosecutions of baseless habeas corpus and post-conviction proceedings."  *Id.*  Counsel for Cone filed a petition for review in the Tennessee Supreme Court of this decision setting out the *Brady* claim in detail.  The Tennessee Supreme Court denied review.  This treatment of Cone's claim illustrates a completely broken system of review in capital cases in Tennessee.

The judge of the Court of Criminal Appeals who wrote the opinion stating that the *Brady* issue was "previously determined," then became the Attorney General of the State by the time the issue came to federal court.  When the issue was later presented to the federal courts, including this Court, the Attorney General maintained his previous judicial position that the *Brady* claim was "previously determined" but shifted the main focus to: "Cone's *Brady* claims were simply never raised in the state court." (Final Brief, p. 12.)  In the federal court, the Attorney General attempts to conceal the very fact that the claim of *Brady* concealment was even presented in the Memphis trial court by stating that the "claims were simply never raised in the state court."  Of course, the two procedural default defenses to the *Brady* claim — "never raised" and "previously determined" — cannot both be true.  The fact is that neither is true.  They were clearly raised but never decided.  The Attorney General is deliberately falsifying the procedural record in the case.

It is difficult to tell exactly what the District Court below held with respect to the *Brady* claims.  The District Court mixes the *Brady*-mitigation claims up in a discursive discussion of ineffective assistance of counsel claims, moving from a discussion of these *Brady* claims on page 17 of the opinion below (App. p. 1549) to a discussion of ineffective assistance of counsel and then back to the claims at page 27.  (App. 1559.)  All we can really tell about the District Court's disposition of the *Brady*-mitigation claims is that the court said they are procedurally defaulted.  It is unclear why they are procedurally defaulted.  The District Court seems to agree at page 1559 with the Attorney General's false argument that the claims have "never been presented to the state courts" and "are now barred by the state post-conviction statute of limitations."  In a footnote at this point, the District Court relies upon Tennessee's three-year statute of limitations for filing post-conviction petitions. T.C.A. § 40-30-102.  The Court begins the limitation period on July 1, 1986, long before Cone discovered the mitigation evidence that the prosecutor at the trial and appellate levels had concealed.  Despite the inconsistency between the State's witnesses (Roby, Flynn and the two experts) and the newly-discovered documents, the District Court wound up its discussion by saying:

The evidence of Cone's guilt was overwhelming, and the material evidence that he was acting under the influence of amphetamine psychosis was, and continues to be, virtually nonexistent.

(App. 1563-64.)  In our Court's earlier opinion invoking procedural default,  we accepted the mistake of Judge Williams in the Memphis trial court and the Tennessee Court of Criminal Appeals by repeating three times that the "independent and adequate state ground in this instance is the State court's finding that Cone's claims were previously determined."  243 F.3d 969.  We accepted the Attorney General's alternative argument and based our holding of procedural default on the Tennessee courts' mistaken position that the claims were "previously determined."  This is simply false.

The law of the case doctrine relied on by the majority does not wed us forever to a clear misreading of the record, especially a misreading brought about by the State's falsification of the record in the case.  Courts should correct their mistakes where important matters are concerned, and a man's life is an important matter.  The previous decisions of the Supreme Court and this Court tell us what is obviously true:  "Death is different."  Mistakes cannot be corrected after a man is executed.  They must be corrected now.  I would set aside the previous "procedural default" ruling on Cone's claim and remand the case to the District Court for a full hearing on the merits regarding his mitigating evidence that the State has now attempted to conceal for 25 years.

After relying on procedural default throughout its first opinion in this case, and now relying on procedural default again in its present opinion, the majority throws up its hands and says, "Well, anyway, all the withheld documents are not really *Brady* material."  It does so without any analysis of the record, or the *Brady* and mitigation lines of cases, and states no basis for its conclusory statement.  The majority's conclusory "well anyway" attitude is just as conclusory and misleading as the prosecutor's false, death knell statement to the jury that the defense statement was "baloney" that Cone was not a heavy drug user as a result of his wartime experience.  The undisclosed, withheld documents directly contradict both the prosecutor's "baloney" statement and the majority's "not *Brady* material" conclusion.  And beyond these errors, the majority seems totally unconcerned that the Tennessee Attorney General's office has completely falsified the procedural record in the case by asserting that the *Brady*-mitigation claims were both "never raised" and "previously determined."